IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| | ) | |
| NORINA BENGE HARRIS, | ) | CASE NO. 06-70538 |
| | ) | |
| | ) | |
| DEBTOR. | ) | |

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| | ) | |
| STEVEN FALIN JARRELL, | ) | CASE NO. 06-71129 |
| | ) | |
| | ) | |
| DEBTOR. | ) | |

## MEMORANDUM DECISION

The above captioned cases came before the Court on the question of confirmation of the Debtors' Chapter 13 plans on December 4, 2006. At that time, the Court raised sua sponte whether it is permissible under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) to confirm plans that continue adequate protection payments post-confirmation until all administrative expenses have been paid and, if so, from what date does interest begin to accrue on the secured loan balance and how are such post-confirmation adequate protection payments to be applied to the debt. The cases were taken under advisement and have since been briefed by Debtors' counsel and the Chapter 13 Trustee. For the reasons stated below, the Court will confirm the Debtors' Chapter 13 plans.

## DISCUSSION OF RELEVANT PLAN PROVISIONS AND

1

**THE PROCEDURAL POSTURE AT TIME OF CONFIRMATION HEARINGS**

Norina Harris and Steven Jarrell filed voluntary Chapter 13 petitions on June 2, 2006 and September 29, 2006, respectively. As the Debtors' petitions were filed after October 16, 2005, their cases are controlled by the provisions of the Bankruptcy Code as modified by the BAPCPA.

On June 30, 2006, Ms. Harris' counsel filed a motion to allow the Chapter 13 Trustee to commence making adequate protection payments to the Ford Motor Credit Company in the amount of $150 per month. According to Ms. Harris's schedules, the Ford Motor Credit Company has a claim against her estate in the amount of $14,437, which is secured by a lien on her 2002 Mercury Marquis.[1] The Court granted the Debtor's motion to allow the Chapter 13 Trustee to make adequate protection payments to the Ford Motor Credit Company by an order entered on August 8, 2006. On October 13, 2006, counsel for the Debtor filed a First Amended Chapter 13 Plan dated October 12, 2006. The Debtor's First Amended Chapter 13 Plan provides that the adequate protection payments that were approved on August 8, 2006 will continue post-confirmation until all attorney's fees owed to counsel have been paid in full. The plan also included a provision directing that all adequate protection payments be applied to the principal balance owed by the Debtor. The Debtor's plan was set for confirmation hearing on December 4, 2006.

On October 10, 2006, Mr. Jarrell's counsel filed a Chapter 13 plan dated September 26, 2006. The Chapter 13 plan provides for the Chapter 13 Trustee to make monthly adequate protection payments to Best Buy, Member One Federal Credit Union, and

---

[1] The Ford Motor Credit Company filed a Proof of Claim for $14,472.24 which values the 2002 Mercury Marquis at $10,175. The Debtor's Schedule D and Chapter 13 plan value the collateral at $9,750.

2

Commonwealth Finance. According to the plan, Best Buy is to receive 12 monthly adequate protection payments in the amount of $12 each followed by 24 equal monthly payments of $57.78; Member One Federal Credit Union is to receive 12 monthly adequate protection payments in the amount of $78 each followed by 24 equal monthly payments of $165.34; and Commonwealth Finance is to receive 18 monthly payments in the amount of $36 each which would also serve as adequate protection payments to the creditor. The plan contained no provisions as to how these payments were to be applied to the balance of the loan. According to Mr. Jarrell's schedules, Best Buy has a claim in the amount of $1,200, which is secured by a lien on miscellaneous electronics that are in the Debtor's possession[2]; Member One Federal Credit Union has a claim in the amount of $4,388.41, which is secured by a lien on a 1999 Ford Mustang[3]; and Commonwealth Finance has a claim for $387, which is secured by a lien against a 1995 Dodge Dakota[4]. The Debtor's plan was set for confirmation hearing on December 4, 2006. On November 11, 2006, Mr. Jarrell's counsel filed a motion to allow the Chapter 13 Trustee to commence making monthly adequate protection payments to Best Buy, Member One Federal Credit Union, and Commonwealth Finance in the above amounts. The Court granted the Debtor's motion to allow the Chapter 13 Trustee to commence making monthly adequate protection payments by an order entered on November 21, 2006.

---

[2] Best Buy did not file a Proof of Claim. The Debtor's Schedule D and Chapter 13 plan value the collateral at $1,200.

[3] Member One Federal Credit Union filed a Proof of Claim for $4,338.41 which valued the collateral at $6,700. The Debtor's Schedule D and Chapter 13 plan value the collateral at $7,775. The debtor owns a one-half interest in the collateral.

[4] Commonwealth Finance filed a Proof of Claim for $296.27 which valued the collateral at $3,000. The Debtor's Schedule D and Chapter 13 plan value the collateral at $4,850. The debtor owns a one-half interest in the collateral as well.

When the Debtors' Chapter 13 plans came before the Court for confirmation on December 4, 2006, the Chapter 13 Trustee recommended both plans for confirmation. At that time there were no outstanding objections to confirmation nor were there any objections to the adequate protection provisions of the plan. When no objections were raised, the Court raised sua sponte two questions regarding the continuation of adequate protection payments beyond confirmation. The Court questioned whether it is permissible under the BAPCPA to confirm plans that continue adequate protection payments post-confirmation until all administrative expenses have been paid and, if it is permissible, from what date does interest begin to accrue on the secured loan balance and how are such adequate protection payments to be applied to the debt. The Court took both cases under advisement and directed counsel for the Debtors and the Chapter 13 Trustee to submit briefs addressing these issues.[5]

**CONCLUSIONS OF LAW**

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. Confirmation is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(L).

Under the provisions of the Bankruptcy Code, this Court is required to confirm a Chapter 13 plan if it complies with the requirements of 11 U.S.C. § 1325. This Court also believes, however, that it has an independent duty not to confirm plans which it believes to be

---

[5] The Court notified the United States Trustee of the questions to be briefed by counsel for the Debtors and the Chapter 13 Trustee by letter dated December 4, 2006. All creditors received notice of the questions raised by the Court and the briefing schedule for those questions via orders continuing the confirmation hearings to January 22, 2007. Neither the United States Trustee nor any creditor has stated a position on the questions raised by the Court.

4

contrary to the pertinent provisions of the Bankruptcy Code irrespective of whether a creditor or other party in interest objects to confirmation. *See United States v. Easley,* 216 B.R. 543, 544 n. 1 (W.D. Va. 1997) ("The Bankruptcy Court is under an independent duty to verify that a Chapter 13 plan does in fact comply with the law, irrespective of the lack of an objection by creditors or the Chapter 13 trustee.").

The Bankruptcy Code provisions that are pertinent to the questions raised by the Court at the confirmation hearings for Ms. Harris and Mr. Jarrell were modified by the BAPCPA. These relevant provisions as modified are -

11 U.S.C. § 1325(a)(5)(B), which provides that:

> (a) Except as provided in subsection (b), the court shall confirm a plan if
>   (5) with respect to each allowed secured claim provided for by the plan
>     (B)(i) the plan provides that–
>       (I) the holder of such claim retain the lien securing such claim until the earlier of–
>         (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>         (bb) discharge under section 1328; and
>       (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
>     (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>     (iii) if–
>       **(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and**
>       **(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan;**
>       (emphasis added)

and 11 U.S.C. § 1326(a)(1)(C), which provides that:

> Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount--
>
>> (C) that provides adequate protection directly to a creditor holding an allowed claim secured by personal property to the extent the claim is attributable to the purchase of such property by the debtor for that portion of the obligation that becomes due after the order for relief, reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment.

The full effect of these modified provisions is a matter of first impression for this Court. In fact, few courts have addressed how the BAPCPA has altered the nature of adequate protection payments and post-confirmation payments to secured creditors. Prior to the BAPCPA, the Bankruptcy Code only referenced adequate protection payments in 11 U.S.C. §§ 361, 362 and 363. These sections only required the payment of adequate protection upon the request of secured creditors. As modified by the BAPCPA, the Bankruptcy Code is now clear that adequate protection payments to secured creditors must commence "not later than 30 days after the date of the filing of the plan or the order for relief." 11 U.S.C. § 1326(a)(1)(C). The Debtors and the Chapter 13 Trustee agree that adequate protection payments are now required pre-confirmation and the Debtors have filed motions to allow the Chapter 13 Trustee to commence disbursing pre-confirmation adequate protection payments to secured creditors. The more difficult questions and the subject of this opinion are:

1. Whether it is permissible under the BAPCPA to confirm plans that continue adequate protection payments post-confirmation, until all administrative expenses have been paid, in amounts less than the "periodic payments" necessary to amortize the secured claims with interest over the term of the respective Chapter 13 plans?

2. If it is permissible for such adequate protection payments to continue post-confirmation, from what date does interest begin to accrue on the secured loan balance and how are such adequate protection payments to be applied to the subject debt?

These questions are addressed below.

I. Is it permissible to continue adequate protection payments post-confirmation and to defer the commencement of the periodic payments necessary to amortize the secured claims?

The Debtors in the subject cases have included provisions in their respective plans that continue adequate protection payments post-confirmation until all administrative expenses have been paid. These provisions provide for secured creditors to receive the full amount of their adequate protection payments while allowing the Debtors' attorneys to be paid the outstanding balances of their fees prior to the commencement of the secured creditors' higher equal monthly amortizing payments. The question is whether such arrangements square with § 1325(a)(5)(B)(iii)(I), which requires that all "periodic payments" to be distributed to secured creditors under a Chapter 13 plan must be in "equal monthly payments" until the debt is paid in full. While it might seem that **any** post-confirmation payments disbursed by the Chapter 13 Trustee on a monthly or other regular basis would be encompassed by the broad language of § 1325(a)(5)(B)(iii)(I), which references "periodic payments," the weight of authority and public policy considerations favor a different conclusion.

Those courts that have addressed the issue of continuing adequate protection payments post-confirmation prior to commencement of equal periodic payments have concluded that it is permissible under the BAPCPA. *See In re Desardi*, 340 B.R. 790 (Bankr. S.D. Tex. 2006)(holding that equal monthly payments are not required to commence upon confirmation); *In re Gardner*, Case No. 05-33414-AJM-13 (Bankr. S.D. Ind. July 24, 2006)(adopting the

7

position taken in *In re Desardi*); and *In re Muhammad*, Case No. 05-33234-FJO-13 (Bankr. S.D. Ind. July 25, 2006)(adopting the position taken in *In re Desardi*).  In *In re Desardi,* the court held that "equal monthly payments" are not required to commence upon confirmation and that it is permissible for adequate protection payments to continue post-confirmation.  *Desardi*, 340 B.R. 790.  The *Desardi* court reasoned that § 1325(a)(5)(B)(iii)(I) "does not state that its requirements must be met beginning in month one of the plan."  *Id.* at 805.  The *Desardi* court also reasoned that had Congress intended equal monthly payments to commence on the effective date of the plan, it could have provided such as it did in the preceding section of § 1325(a)(5)(B)(ii).  *Id.*  Through a lengthy mathematical computation, the *Desardi* court's analysis also went on to reject the position that equal monthly payments must be paid during the entire length of the plan as a mathematical impossibility.  *See id.* at 809.  No authority has been cited that conflicts with the position adopted by the *Desardi* court, nor has the Court found any such authority.

Counsel for the Debtors assert that public policy also favors allowing adequate protection payments to continue post-confirmation until all administrative expenses have been paid in full.  They argue that many members of the bankruptcy bar receive little money up-front and rely upon post-confirmation payments disbursed by the Chapter 13 Trustee to obtain the remainder of their fees.  If adequate protection payments are not allowed to continue post-confirmation, these attorneys would be faced with receiving their fees over a substantial period of time.  Although this may be theoretically feasible, they contend that the bankruptcy bar would be faced with the practical dilemma of being unable to generate sufficient income to properly staff their offices or fulfill the many new tasks required under the BAPCPA.  This dilemma would result in attorneys being forced to either increase the portion of their fee they

receive up-front or leave the practice of representing consumer bankruptcy debtors altogether. The end result would be that the number of pro se filings would increase dramatically as those most in need of bankruptcy protection would be unable to afford, or possibly even to find, available counsel. Considering the complexity of Chapter 13 cases following the adoption of the BAPCPA, this would be an undesirable result.

As the Court has been unable to find relevant authority other that discussed above, it has turned to Judge Lundin's comprehensive treatise, *Chapter 13 Bankruptcy, 3d Edition*. Judge Lundin's treatise was revised in 2006 and addresses the vast majority of changes effectuated by the BAPCPA. Keith M. Lundin, *Chapter 13 Bankruptcy, 3d Ed.* (2000 and Supp. 2006). Although Judge Lundin addresses the amended pre-confirmation and post-confirmation adequate protection provisions and the required equal "periodic" payment provisions of BAPCPA at some length, he does not discuss specifically whether it is permissible to continue adequate protection payments post-confirmation at a level less than the amortized equal monthly payment. The tenor of his discussion seems to reflect, however, an understanding on his part that the post-confirmation adequate protection requirement of § 1325(a)(5)(B)(iii)(II) establishes "a floor under the equal monthly payments that are required by new § 1325(a)(5)(B)(iii)(I)". *See* Keith M. Lundin, *Chapter 13 Bankruptcy, 3d Ed.*, §449.1, at 449-2 (2000 and Supp. 2006). In short, that the post-confirmation periodic payments must not only be equal but must also be at least high enough to provide "adequate protection" to the secured creditor.

After considering the rationale of *Desardi* and the cases adopting its rationale and the arguments of Debtors' counsel and the Chapter 13 Trustee, the Court concludes that the plain language of § 1325(a)(5)(B)(iii) does not clearly preclude the continuation of adequate protection payments post-confirmation until all administrative expenses have been paid in full.

9

In reaching such conclusion, the Court recognizes that it has received briefs only from parties who are agreed that the Debtors' proposed plan provisions are acceptable. Accordingly, the Court's decision is not the result of any adversarial contest and therefore can settle such issue only with respect to cases in which no contrary position is asserted by some party in interest. If such a situation ever arises, the Court will be able to reach a ruling after considering the arguments raised by the party objecting to treatment similar to that provided in the cases now before the Court.

II.    From what date does interest begin to accrue on the secured loan balance and how are such adequate protection payments to be applied to the subject debt?

Having concluded that it is permissible to continue adequate protection payments post-confirmation, the Court will now turn to the question of when interest begins to accrue on the secured loan balance and how adequate protection payments are to be applied to the subject debt. § 1325(a)(5)(B)(ii) provides that to be confirmable a plan must provide that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." The Trustee and Debtors' counsel in the present cases agree that the effective date of the plan is the date of confirmation and that interest should begin to accrue on the date of confirmation. It is settled that for a creditor to receive the value of his collateral at any fixed date through deferred cash payments, the creditor must receive interest on the secured loan balance from that fixed date. *See Till v. SCS Credit Corp.*, 541 U.S. 465 (U.S. 2004)(holding that the "formula" approach is the correct method for determining the interest rate that should be applied to a secured loan balance to ensure the secured creditor receives the value of its collateral); and *Rake v. Wade*, 508 U.S. 464, 469-470 (U.S. 1993)(holding that a secured creditor must receive interest in order to receive the present

value of a secured claim).  The effective date of a plan is ordinarily the date of its confirmation.[6] *See Rake*, 508 U.S. at 469 (stating that "§ 1325(a)(5)(B)(ii) guarantees that property distributed under a plan on account of a claim, including deferred cash payments in satisfaction of the claim (citation omitted) must equal the present dollar value of such claim as of the confirmation date"). The standard form Chapter 13 plan adopted by the Eastern and Western District of Virginia Bankruptcy Courts provides that interest will be paid on under-secured claims, other than those secured solely by the debtor's principal residence, beginning on the confirmation hearing date.[7] Accordingly, the Court agrees with counsel for the Debtors and the Chapter 13 Trustee that the date of confirmation is the correct date to be used in these cases from which interest begins to accrue on the balance of the secured loan.

§§ 1325(a)(5)(B)(i)(I) and (II) provide that payment and retention of liens held by secured creditors shall be determined by applicable non-bankruptcy law.  The Chapter 13 Trustee and counsel for Mr. Jarrell agree that these sections provide that applicable non-bankruptcy law is to control how payments are applied to a creditor's secured loan balance. Counsel for Ms. Harris expanded upon this point by providing a "mechanical" explanation as to how he believes adequate protection payments should be applied.  In his brief, Ms. Harris's counsel argues that because no interest accrues prior to confirmation, all pre-confirmation

---

[6] This Court previously ruled that the "effective date" of a Chapter 13 plan for the purpose of paying interest on secured claims when the creditor is not "over-secured" is the original confirmation hearing date for the initial Chapter 13 plan filed by the debtor. *In re Allen* 240 B.R. 231, 241 (Bankr. W.D. Va. 1999).  In that case, sixteen months had elapsed between the case filing date and the confirmation hearing date for the debtor's Amended Plan No. 3 considered in that decision.

[7] Form plan Paragraph 3(A): "The Trustee shall pay allowed secured claims the value stated below or the amount of the claim, whichever is less, with interest at the rate stated below from the date of confirmation until the secured claim is paid in full."

adequate protection payments should be applied to the principal balance while post-confirmation adequate protection payments should be applied first to the accruing interest with any excess being applied to the principal of the claim.[8]  Although the brief filed by Ms. Harris's counsel argues that only pre-confirmation adequate protection payments are applied solely to the principal balance, the Debtor's Chapter 13 plan indicates that all adequate protection payments are to be applied solely to the principal of the secured loan balance.  When given the opportunity to respond to this inconsistency, counsel for Ms. Harris stated that he may have overstated his position and that he would consent to the Chapter 13 Trustee's position.  Accordingly, based on the plain language of §§ 1325(a)(5)(B)(i)(I) and (II) and the agreement of Debtors' counsel and the Chapter 13 Trustee, the Court concludes that applicable non-bankruptcy law controls how post-confirmation payments are applied to secured loan balances, not plan provisions.[9]

Having addressed the issues raised by the Court, the Court concludes that the previously discussed provisions of Mr. Jarrell's Chapter 13 plan comply with the pertinent provisions of the Bankruptcy Code.  As such, the Court will confirm Mr. Jarrell's Chapter 13 plan as filed.

Regarding the case of Ms. Harris, the Court concludes that the adequate protection provisions of her plan comply with the pertinent provisions of the Bankruptcy Code insofar as they provide pre-confirmation adequate protection payments to comply with 11 U.S.C.

---

[8]    *See generally In re Allen* 240 B.R. 231 (Bankr. W.D. Va. 1999).

[9]    When addressing a similar issue in the context of an unsecured creditor, the Fourth Circuit held that non-bankruptcy law, not plan provisions, controls how a creditor applies post-confirmation disbursements from the Chapter 13 Trustee to the balance of an outstanding debt.  *See In re Kielisch*, 258 F.3d 315, 325-326 (4th Cir. 2001)(holding that the provision of a Chapter 13 plan could not override a creditor's contractual rights to apply post-confirmation payments to the non-dischargeable portion of a debtor's student loans).

§ 1326(a)(1)(C) and they continue adequate protection payments post-confirmation until all administrative expenses are paid in full.  The Court, however, concludes that the language contained in paragraph 11B of Ms. Harris's plan that directs principal of the secured loan balance does not comply with the pertinent provisions of the Bankruptcy post-confirmation adequate protection payments be applied solely to the Code and governing precedent.   As such and with consent of Ms. Harris's counsel, the Court will confirm Ms. Harris's Chapter 13 plan with qualifying language that the language of paragraph 11B which would require that post-confirmation adequate protection payments be applied to the principal of the subject loans shall not be effective.

## DECISION

Based on the weight of available authority, public policy and lack of objections, the Court concludes that the plain language of § 1325(a)(5)(B)(iii) does not clearly preclude the continuation of adequate protection payments post-confirmation until all administrative expenses have been paid in full.  The Court has also concluded that interest begins to accrue on the secured loan balance as of the date of plan confirmation and that post-confirmation adequate protection payments are to be applied to the subject debt consistent with the requirements of applicable non-bankruptcy law.

The Court will defer any further consideration of any differing interpretation of requirements of the BAPCPA until such time, if ever, as a party in interest may object thereto and the issue is presented in an adversarial context in which any contrary position on these questions can be fully briefed.

For the reasons stated, the Court by separate order will confirm the Debtors' Chapter 13 plans.  Ms. Harris's plan shall be confirmed subject to the excision of the language of

paragraph 11B which directs that all adequate protection payments be applied solely to the principal of the secured loan balance. Mr. Jarrell's plan shall be confirmed as filed.

ENTER this 12th day of January, 2007.

_William F. Stone, Jr._
UNITED STATES BANKRUPTCY JUDGE